### DAVID E. VAN HOUTEN

*v.*

### WILLIAM VAN HOUTEN, EDWARD VAN HOUTEN, MABEL VAN HOUTEN and FREDERICK VAN HOUTEN.

[Filed December 17th, 1904.]

1. Complainant purchased lands and had the deed executed by the grantor to certain of his children, reserving a life estate to himself, drawn by his solicitor. It appeared that he had knowledge of the provisions of the deed, and intended it as an advancement to the children.—*Held*, that after thirteen years, and after his family had been broken up by dissensions, the complainant could not have the deed reformed, on the ground that his solicitor, by mistake, neglected to insert in the deed a power of revocation to complainant.

2. This cause of action was within the original jurisdiction of the court of chancery, and not within the act for quieting titles to real estate. Where such is the case, the complainant ought not to be allowed to exercise an option either to pursue his equitable remedy under the original jurisdiction of the court of chancery or to file a bill under the act for quieting titles. The legislature has no power to force a jury trial upon the court of chancery in cases within the original jurisdiction of the court, and make the determination of the jury in such cases as final as in courts of law.

3. Limits within which suit may be brought under the act for quieting titles considered.

On final hearing on bill, answer and proofs.

*Mr. Robert E. Van Hovenberg,* for the complainant.

*Mr. Walter R. Hudson,* for the defendants.

STEVENSON, V. C.

My conclusion is that the bill should be dismissed.

1. The bill does not present a case under the "Act to compel the determination of claims to real estate in certain causes and to quiet the title to the same" (*3 Gen. Stat. p. 3486*), as counsel for complainant has erroneously supposed, in conducting his proceedings in the cause. The case set forth in the bill of complaint and attempted to be proved is one of exclusive equitable cognizance under the original jurisdiction of the court of chancery. It is the case with which courts of equity have in recent times become quite familiar, where a voluntary grantor or donor undertakes to have his gift of real estate practically revoked and restored to himself. *1 Story Eq. Jur. (11th ed.)* § *706b; Mulock v. Mulock, 31 N. J. Eq. (4 Stew.) 594, 602; Garnsey v. Munday, 24 N. J. Eq. (9 C. E. Gr.) 243; White v. White, 60 N. J. Eq. (15 Dick.) 104, 115; Grant v. Baird, 61 N. J. Eq. (16 Dick.) 389.*

The placing of the complainant's case in the class to which it properly belongs is not, so far as the determination of the case is concerned, a matter of importance. The bill does not set forth only those matters which the statute requires a bill to quiet title to contain, while calling upon the defendants to "set forth and specify their title, claim or encumbrance," &c. The true character of this case would have been made manifest if either party had demanded that an issue at law be framed and sent to a law court for trial in order to obtain the finality of a verdict of a jury, which the statute expressly prescribes. Any issue at law which might have been framed in this case would have been, in my judgment, entirely beyond the statute and wholly within the discretionary power of this court. A complainant in peaceable possession of land, and having an ample equitable remedy to remove a cloud on his title, ought not to be allowed to exercise an option either to pursue his equitable

remedy under the original jurisdiction of the court of chancery, setting forth the whole controversy between himself and the defendant, or to file a bill to quiet his title under the statute in which he would call upon the defendant to set forth what would be purely an equitable controversy, and then have a jury in a court of law decide this controversy, or some essential part of it. Juries are not appropriate tribunals to determine purely equitable controversies. But apart from this consideration the legislature is not clothed with power, under our constitution, to force a jury trial upon the court of chancery, or to compel the court of chancery to submit those controversies of which it has original jurisdiction to the determination of a jury in a court of law, such determination having the attribute of finality to the same degree allowed in legal tribunals. *Sanderson* v. *Sanderson,· 52 N. J. Eq.* (*7 Dick.*) *243, 246.*

In the leading case of *Jersey City* v. *Lembeck, 31 N. J. Eq.* (*4 Stew.*) *255, 272,* the court of errors and appeals limits the apparently wide scope of the remedy provided by the statute above mentioned so as to exclude cases where the "party in possession of land can throw the hostile claim into a court of law and thus get rid of the cloud overhanging his estate." The same reasoning, I think, is even more applicable to the exclusion of cases where the party in peaceable possession has a complete equitable remedy without invoking the statute, and the subject-matter of the controversy is beyond the cognizance of courts of law. Chief-Justice Beasley, in his opinion, in which he apparently speaks for the entire court, points out distinctly that the constitution of the state prevents the legislature from transferring to the court of chancery the exercise of powers vested in the courts of law, and also forbids the "transfer to a court of law of any matters of equitable cognizance."

It is an amazing result, indeed, if suits for specific performance to convey real estate, suits to set aside deeds and mortgages on the ground of fraud and mistake, suits to establish trusts and innumerable other equity causes, can in large numbers of instances be displaced by the composite legal and equitable action prescribed by the statute which we are considering, in

which statutory action many of the established rules of equity pleading and important presumptions of evidence are abrogated or reversed. All that would be necessary to secure this result if a literal construction of the statute is to be adopted, and the statute then is to be enforced, is to have the complainant in peaceable possession under claim of title, with no suit pending in which the defendant's title or claim can be tested. It seems plain that the entire force of the reasoning of Chief-Justice Beasley, in the case of *Jersey City* v. *Lembeck,* excludes from the operation of this statute not only all cases where the party in peaceable possession can maintain an action at law to remove the alleged cloud on his title, but also all cases where such party can maintain a similar equitable action under the original jurisdiction of the court of chancery.

Notwithstanding the mistake of the counsel for complainant in classifying his case, no harm has resulted therefrom. The bill of complaint exhibits the whole controversy and the cause has been conducted according to the rules which govern the trial of equity causes, and without attempting to invoke any of the special provisions of the act to quiet titles. Inserting in the bill the few brief special allegations prescribed by the statute—endorsing the bill as a bill to quiet title, issuing the tickets with the subpœna according to the provisions of section 2 of the statute—these things have not injuriously misled or otherwise harmed anyone interested in this cause.

2. The deed under examination was executed by Daniel Ackerman and wife to the four defendants and three other children of the complainant, since deceased, all of whom were infants, on January 15th, 1889, nearly twelve years before this suit was commenced. The complainant paid the entire consideration of the deed ($1,900), and apparently took possession of the property as a residence, with his family, and continued such residence down to the present time. In August, 1901, complainant's wife and children, the defendants, or those of them who had not already left home, left the complainant in possession of the premises and established a residence elsewhere for themselves. The relations of the complainant with his wife and children

evidently became in a measure hostile. He had previously lived somewhat unhappily with his wife on account of their quarrels.

When the deed was made, in 1889, the grantees, the children, appear to have had nothing to do with the affair. The complainant selected his counsel, who has since deceased, and gave instructions for the deed. He was a man of some experience in business affairs, was able to read and write, and appears to have possessed a fair share of intelligence. There is nothing to suggest that he was not able to understand the deed which his counsel drew, and which he perused, at least in part. The deed, which is in form a warranty deed with the usual covenants, in which the grantor is the party of the first part and the grantees, the seven children of the complainant, constitute the party of the second part, contains a peculiar provision. The *habendum* is in the usual form—"To the only proper use, benefit and behoof of the said parties of the second part, their heirs and assigns forever." Then comes the following:

"But particularly upon this express reservation and condition, that the right of the said parties of the second part to occupancy, and also all and any right of the said parties of the second part to the rents, issues and profits (or any such thing) of the said premises, shall be deferred until the demise of David E. Van Houten, the father of the said mentioned parties of the second part. And upon this condition is this conveyance executed, viz., that the said David E. Van Houten shall have, hold, occupy, use and enjoy the said above-granted premises, with the appurtenances and every part thereof, unto the said David E. Van Houten, for and during the natural life of the said David E. Van Houten, together with all rents, issues and profits thereof; and upon the death of the said David E. Van Houten, but not before, shall all the rights of the parties of the second part (hereinabove reserved) become complete."

The grantor also covenants that he has good right, &c., to convey the land "to the said parties of the second part and to and for their use and the present use of the said David E. Van Houten, in the manner aforesaid." The covenant of warranty also is "unto the said David E. Van Houten for and during his natural life, and after his life unto the above-named parties of the second part."

The complainant makes no objection to this deed because of its failure to make him a party in the usual way, and to vest

in him by virtue of direct words of conveyance a life estate, which the whole instrument manifestly creates for his benefit. The complainant's complaint is that he directed his solicitor "to draw the deed, and if possible, without interfering with the title" of the complainant, "include the children" of the complainant, "but not in such a way to make them the owners" of the land "or prevent him in any way from disposing of the said premises or mortgaging the same if he should at any time so desire," the intent of the complainant "being to retain absolute control over said premises and the sole ownership thereof, so that he could dispose of or mortgage the same at any time if he should so wish."

The bill further alleges that the solicitor informed the complainant that his instructions had been followed, and that thereupon the complainant "rested, satisfied in regard to said conveyance, and did not examine or read the same," and that the complainant learned that his children, the defendants, were named as grantees in the conveyance after the death of his solicitor who drew the deed, and charges that the making of the defendants as grantees in the deed was "an error on the part of his solicitor, the said deed being drawn in that way without the direction" of the complainant.

These latter allegations in the bill are not only not proved to be true, but are proved to be false. The complainant knew that his children were mentioned as grantees in this deed. He probably heard the whole deed read and admits that he read a portion of it. Before the deed was executed his attention was called to the fact that one of his children, who were then seven in number, had been left out of the deed, and thereupon he took the conveyance away from the grantor, in whose house the error was discovered, and had the name of one of the defendants, Edward Van Houten, interlined as a grantee, the interlineation being duly noted by the complainant's solicitor who made the same.

It certainly is a great difficulty in the way of the complainant that the mistake which he undertakes to set forth in his bill, and upon which he bases his equity to have his voluntary deed set

aside, is an entirely different sort of a mistake from the one which has some support in the proofs.

Casting aside the misrepresentations of the complainant in his bill, the question remains whether the complainant has a right to have this voluntary deed set aside because he caused it to be made under a misapprehension of its exact legal effect, or because it contained no power of revocation, or for any other reason on account of which courts of equity permit such gifts of land to be revoked.

I think it is quite plain that the gist of the real claim of the complainant entitled to consideration upon these proofs is that he did not intentionally deprive himself of the right to sell or exchange this land during his lifetime, which amounts to the claim that he did not know that the gift to his children subject to his life estate was irrevocable.

This deed is not, in my opinion, subject to any attack on the part of the complainant because it was not accompanied by a power of revocation, if the complainant fully understood its nature and effect. The gift is not shown to have been in the slightest degree improvident. The complainant admits that he desired and intended to make a settlement upon his children by his second marriage, certain children by a former marriage having been already provided for. The property was used and evidently intended to be used as a home for the complainant and his family. The conveyance secured this home to the complainant for his lifetime, removed it from the effect of any temptation which might assail the complainant to mortgage or sell the same, and insured the children upon the complainant's death the absolute ownership of their home without the encumbrance of a dower-right which might give them trouble. The complainant's wife, who was sworn as a witness for the defendants, testifies that in her quarrels with the complainant he would say: "Whose house are you living in? You will find out when my head is laid down. You will find yourself landed in the gutter." The witness testified that the complainant "said this quite often," and the complainant was not called to make any contradiction.

It is well settled that there is no presumption of a resulting trust where a deed is made to children for a consideration paid

by their father. In such case the matter is open for investigation upon the evidence. *2 Pom. Eq. § 1041.*

The question, therefore, in this case is narrowed down to the inquiry whether the complainant thought that there was a power of revocation in this deed, or that, in spite of its terms, he had the practical power of revocation, which he swears it was his intention to reserve to himself. This question of fact upon this evidence I feel constrained to decide against the complainant. Speaking more accurately, I may say that the testimony, in my opinion, fails to sustain the complainant's insistment.

I think it must be presumed in this case that the complainant read this deed and knew that his children were the grantees named therein, and that they became, under the deed, owners in fee, subject to a life estate in the complainant. Whatever may be said about the inartistic manner in which this deed is·drawn, there is nothing about it which, in my opinion, could possibly be unintelligible or in any way liable to mislead such a man as the complainant.

All the evidence in this case, in my opinion, is consistent with the theory that the complainant, when his wife and children left him in August, 1902, regretted that he had made this settlement upon his children in January, 1889, and in view of the change in his circumstances, desired to revoke the same. The question is whether in this case a court of equity will set aside this settlement upon the uncorroborated testimony of the complainant that he thought, in spite of the plain provisions of this deed, which are such as to require no extraordinary intelligence to understand, that he (the complainant) in some way had the power to convey or mortgage this land for his own benefit at any time during his lifetime as he might see fit. The complainant never owned the land. He knew that the title passed from Daniel Ackerman directly to his children. He must have known that what rights he had of necessity would have to be specified in the deed. It is quite important to note that the case might be stronger for the complainant if he had owned the property and made this deed. A misapprehension of the rights which he would then have conveyed to his children would involve a similar misapprehension of the rights which he retained. But the ascer-

tainment of all the complainant's rights was more simple in this case because the rights of all the parties passed from Daniel Ackerman, under the terms of this perfectly plain deed. Complainant's story is not only without corroboration, but, in my opinion, is improbable.

Where a voluntary settlement upon children like this is not improvident, and the absence of a power of revocation is natural, and the settlor, being reasonably intelligent, has procured the deed of settlement and is charged with the knowledge of its perfectly plain provisions, which are such that any fairly intelligent person would understand, he cannot, in my opinion, come into a court of equity thirteen years after the settlement has been made and by his own uncorroborated oath compel the court to find that he did not understand the legal effect of the settlement, but in some mysterious way believed that he had during his lifetime absolute power of disposition over the land in question, although the deed of settlement was executed by a stranger and plainly contained no such power. In brief, the complainant by his unsupported oath cannot compel this court to believe an improbable story so as to procure the setting aside of this deed thirteen years after it was made, and after the man who drew it has deceased.

The view which I take of the evidence in this case makes it unnecessary to attempt any consideration of the nature and exact definition of the jurisdiction of this court to set aside a voluntary conveyance of land made by a donor for the benefit of children or other relatives "in a case unsmirched by fraud" (*Mulock* v. *Mulock, supra, p. 602*). I do not think that the evidence in this case would justify any finding that the complainant's gift when made did not exactly conform with his donative intention, or that he acted under the slightest misapprehension of the nature and effect of the deed which he caused to be made to his children, which also to a large extent was for his own benefit. This conclusion of fact disposes of the theory upon which the bill of complaint was framed, but I may add that, in my opinion, the case exhibited by the proofs is not one where a court of equity will aid a donor to get back his gift because he has changed his mind. The complainant was fully competent in

1889 to make the absolute gift to his children which I think the evidence shows he then intended to make, and therefore that gift should not be revoked by a decree that its effect was to create a resulting trust for the complainant's benefit.